# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| LIFEPORT SCIENCES LLC, and <br> LIFESCREEN SCIENCES LLC, <br><br> Plaintiffs, <br><br> v. <br><br> COOK INCORPORATED and <br> COOK MEDICAL LLC, <br><br> Defendants. | ) <br> ) <br> ) <br> ) C.A. No. 13-362-GMS <br> ) <br> ) **JURY TRIAL DEMANDED** <br> ) <br> ) <br> ) <br> ) <br> ) |

## DEFENDANTS' MOTION FOR RECONSIDERATION OF THE COURT'S CONSTRUCTION OF "A DISPLACEMENT MEMBER ATTACHED TO SAID TUBULAR MEMBER FOR DISPLACING THE FILTER FROM SAID SEGMENT"

OF COUNSEL:

Dominic P. Zanfardino
Bradley G. Lane
Jason W. Schigelone
James M. Oehler
BRINKS GILSON & LIONE
NBC Tower, Suite 3600
455 N. Cityfront Plaza Drive
Chicago, IL 60611
Tel: (312) 321-4200

Dated: July 15, 2015
1195463 / 39841 (13-362)

Richard L. Horwitz (#2246)
David E. Moore (#3983)
Bindu A. Palapura (#5370)
Stephanie E. O'Byrne (#4446)
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, DE 19801
Tel: (302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com
bpalapura@potteranderson.com
sobyrne@potteranderson.com

*Attorneys for Defendants Cook Incorporated and Cook Medical LLC*

## I.     INTRODUCTION

Respectfully, Defendants Cook Incorporated and Cook Medical LLC ("Cook") ask this Court to reconsider its decision to adopt a plain and ordinary meaning construction for the "displacement member" limitation found in claim 1 of U.S. Patent No. 6,383,193 ("Cathcart '193"). (*See* D.I. 92 ("Order on Claim Construction") at 8).[1] Although the Court agreed that the words "displacement member" themselves do not "connote structure," (*id.* at 8 n.13), the Court found that the "displacement member" limitation was not a means-plus-function limitation because Cook "ha[d] not rebutted the presumption against means-plus-function construction." (*Id.*) Cook respectfully requests reconsideration of that decision and the ensuing claim construction.[2]

## II.    THE PARTIES' ARGUMENTS, THE CLAIM CONSTRUCTION HEARING, AND THIS COURT'S CLAIM CONSTRUCTION

### A.     LifeScreen's Arguments

Plaintiff LifeScreen Sciences LLC ("LifeScreen")[3] made two arguments for why the "displacement member" limitation is not a means-plus-function limitation. First, citing nothing more than a conclusory two-sentence statement at Paragraph 42 of the Opolski Declaration, LifeScreen argued that "the words of the claim read in the context of the written description and the prosecution history, as the Court must, connote sufficient structure to those of skill in the art sufficient to avoid invoking invoke § 112, ¶ 6." (D.I. 64 (Pls. Op. Br.) at 34). But the entirety of Opolski's opinion on the matter reads as follows:

> 42.     One of skill in the art would understand the term "displacement member," when read in the context of the disclosures in the specification, to connote

---

[1] The parties met and conferred regarding this Motion; LifeScreen will oppose.

[2] Cook reserves its rights regarding other aspects of the Order on Claim Construction.

[3] Plaintiffs allege that LifeScreen owns the two asserted Cathcart patents. (D.I. 1 at 2).

structure. In particular, it describes a plunger, pusher, cup, rod or similar structure that creates relative movement between the filter and the outer tubular member.

(D.I. 65-1 (Opolski Decl.) at ¶ 42).

Second, relying on recently-overturned case law, LifeScreen argued that Cook failed to carry "its burden of overcoming the strong presumption against invoking § 112, ¶ 6 when the word 'means' is not present." (Pls. Op. Br. at 34). In this regard, LifeScreen argued that "Cook has presented no evidence whether one of skill in the art reading this limitation in the context of the specification would understand this term to connote structure." (D.I. 69 (Pls. Ans. Br.) at 28).

### B. Cook's Arguments

To show that the "displacement member" limitation should be construed as a means-plus-function limitation, Cook demonstrated (and this Court agreed) that the words "displacement" and "member" connote no definite structure. (D.I. 66 (Def. Op. Br.) at 15-16). Moreover, the parties agreed that:

(1) the *only* difference between claim 1 of Cathcart '193 and Claim 6 of Cathcart '347 is the substitution of the words "a displacement member" for "control means" (D.I. 68 (Def. Ans. Br.) at 14-15); and that

(2) the "control means" limitation in claim 6 of Cathcart '347 is a means-plus-function limitation.

As for the Opolski Declaration, Cook pointed out that the extrinsic, conclusory, and speculative Opolski Declaration cites to nothing to support this opinion and never explains how terms in the claim connote the necessary structure, and that the Opolski Declaration references so-called structures ("a plunger, pusher, cup or rod") appearing nowhere in the claim and used nowhere in the Cathcart specification. (Def. Ans. Br. at 15). Cook also noted the law confirming that the requisite structure must come from the claim itself, and not the specification. (*Id.* at 15 n. 15 (citing *TriMed, Inc. v. Stryker Corp.*, 514 F.3d 1256, 1259-60 (Fed. Cir. 2008)).

Because the Opolski Declaration was based on an erroneous application of the law, Cook urged that it was inadmissible under the Supreme Court's decision in *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993). (*Id.*)

### C. The Claim Construction Hearing

Following claim construction briefing and shortly before the claim construction hearing, Cook cross-examined Opolski. Opolski conceded the following:

> Q. You didn't explain in your declaration what disclosures in the specification a person of ordinary skill would have relied on for this understanding; did you?
>
> A. I don't believe I cited anything, correct.
>
> Q. In fact, in reaching your conclusions in Paragraph 42, you didn't refer to a single disclosure in the patent in support of your opinion, correct?
>
> A. Correct.
>
> * * *
>
> Q. Can you show me where in your declaration you explain how a person of ordinary skill would have arrived at the understanding that displacement member connotes structure?
>
> A. I did not explain that part.

(Zanfardino Decl.,[4] Ex. 1 (Opolski Tr.) at 283-86); *see also id.*, Ex. 2 (Cathcart Slides) at 49-50).

Opolski's concessions did not end there. For example, Opolski admitted that he did not do a "thorough" or "careful" review of the Cathcart patents, did not review their prosecution history, and had no understanding of any prior art delivery systems:

> Q. So is it fair to say that you did not review the '193 Patent before you issued your opinions in this case?
>
> A. Well, I reviewed it. But I reviewed it in light of what I need to do with it. What I needed to review as opposed to a thorough review and a detail review . . . .

(Opolski Tr. at 254-55).

> Q. And you said that in other cases you had reviewed the prosecution history; right?
>
> A. Yes.

---

[4] The Declaration Of Dominic P. Zanfardino In Support Of Defendants' Motion For Reconsideration ("Zanfardino Decl.") is being submitted contemporaneously herewith.

3

>Q. But in this case you did not?
>
>A. Correct.
>
>Q. Why not?
>
>A. I didn't find it to be necessary. . . . I didn't think that between the claims and the specification I really need to go further. I thought it was pretty clear.
>
>* * *
>
>Q. That prosecution history contains statements from the representatives of the people seeking the patent regarding what they believe their patent covered; correct?
>
>A. Potentially, yes.
>
>Q. And you don't know if it does in this case because you didn't look at them; right?
>
>A. I did not look at the file history.

(*Id*. at 105-06).

>Q. Would you be curious about what the file histories say in this case?
>
>A. I am curious, but I didn't think it was necessary to review it at this stage.
>
>Q. Do you have copies of them?
>
>A. No.
>
>Q. Did you ask for copies of them?
>
>A. No.

(*Id.* at 110).

>Q. Do you understand the structures of the vena cava filter delivery systems that existed prior -- or before the '347 and '193 Patents were filed?
>
>A. I've never done a study of them and what was available. I've never needed to and never have.
>
>Q. So you don't have an understanding of the structures of vena cava filter delivery systems that existed before the '347 and '193 patents were filed; correct?
>
>A. I never -- I never reviewed specifically vena cava filter patents, you're right.

(*Id.* at 255-56 (objections omitted)).

At the claim construction hearing, Cook was prepared to present to the Court pertinent Opolski cross-examination. (*See, e.g.,* Cathcart Slides at 49-50). However, LifeScreen advised the Court that it did not intend to present oral argument and would rely on its written submissions. (D.I. 80 (Markman Tr.) at 119:24 – 120:3). Cook started to explain that,

4

depending on whether LifeScreen or the Court would be relying on the extrinsic expert evidence, Cook would be willing to rely on its written submissions, when the Court intervened:

> MR. ZANFARDINO: So, Your Honor, given that they are willing to rely on their brief for displacement member, we are willing to do the same.
>
> THE COURT: Okay. That's good.
>
> MR. ZANFARDINO: I suppose the only issue there is part of their brief addresses expert issues. And if --
>
> THE COURT: I know how to filter things, counsel.

(*Id.* at 120:17-24).

### D. This Court's Construction of the "Displacement Member" Limitation

This Court construed the "displacement member" limitation to have its plain and ordinary meaning. (Order on Claim Construction at 8). According to the Court:

> The introductory phrase "displacement member" does not, by itself, connote structure. "Member," like other nonce words, derives meaning from the context in which it is used. *See id.* at 8. And "displacement" merely repeats the function of "displacing." The interaction of the displacement member with the other components of the delivery system, however, does serve to impart sufficiently definite structure to the term. *See id.* ("[T]he claim does not describe how the "distributed learning control module" interacts with other components in the distributed learning control server in a way that might inform the structural character of the limitation-in-question or otherwise impart structure to the 'distributed learning control module' as recited in the claim."). The displacement member is *attached* to the tubular member, which the claims described as "elongated, radially flexible and axially stiff." '193 Patent, claim 1. The tubular member houses the filter and the segment – "short compared to the axial length of the filter"- in its distal section. *Id.* The displacement member interacts with these elements so as to displace the filter from the segment and deploy it in the body. The plaintiffs provided the expert declaration of Steven Opolski, confirming that one skilled in the art would understand the term "displacement member" as having sufficiently definite structure, in light of the specification. (D.I. 59, Ex. 1, ¶ 42.) This extrinsic evidence is consistent with the intrinsic record and supports the court's conclusion that the defendants have not rebutted the presumption against means-plus-function construction.
>
> The defendants argue that the structure of the claim term is nearly identical to the "control means" claim term, *supra* note 12, which all parties agree is a means-plus-function term. But of course, the terms are different in one key respect: the recitation of the word "means," the "statutory signal" for the patentee's intent to invoke means-plus-function claiming. *See Williamson,* 2015 WL 3687459, at *15 (Newman, J., dissenting); *see also Flo Healthcare Solutions, LLC v. Kappos,* 697 F.3d 1367, 1374 (Fed. Cir. 2012) ("When the claim drafter has not signaled his intent to invoke § l12[(f)] by using the term

5

'means,' we are unwilling to apply that provision without a [proper] showing . . . ."). The defendants cannot satisfy their burden to overcome the presumption merely by pointing to a different term where the presumption applies in the opposite direction.

(*Id.* at 8-9 n.13).

## III. LEGAL STANDARDS

A motion for reconsideration is timely if filed within fourteen days of the challenged ruling. *See* L.R. 7.1.5. Although motions for reconsideration are granted only "sparingly," such requests are appropriate when the Court has made an error not of reasoning, but of apprehension. *Shelbyzyme, LLC v. Genzyme Corp.*, C.A. No. 09-768-GMS, 2013 U.S. Dist. LEXIS 88822, at *6 (D. Del. June 25, 2013); *see also Schering Corp. v. Amgen, Inc.*, 25 F. Supp. 2d 293, 295 (D. Del. 1998) (motion for reconsideration may also be granted if it appears that the court has patently misunderstood a party, has made a decision outside the adversarial issues presented by the parties, or has made an error of apprehension).

## IV. THIS COURT SHOULD RECONSIDER ITS CONSTRUCTION OF THE "DISPLACEMENT MEMBER" LIMITATION AND FIND IT TO BE A MEANS-PLUS-FUNCTION LIMITATION

### A. LifeScreen's Evidence and the Import of LifeScreen's Concession That The "Control Means" Limitation Fails To Connote Structure

The Court held that neither the word "displacement" nor the word "member" connotes any structure. (Order on Claim Construction at 8 n.13). Relying on other language in the claim, the Court concluded that the interaction of the non-structural "displacement member" with the other components of the delivery system serves to impart sufficiently definite structure to the term:

> The displacement member is *attached* to the tubular member, which the claims described as "elongated, radially flexible and axially stiff." '193 Patent, claim 1. The tubular member houses the filter and the segment – "short compared to the axial length of the filter" - in its distal section. *Id.* The displacement member interacts with these elements so as to displace the filter from the segment and deploy it in the body.

6

(*Id.*)

The table below compares Claim 6 of Cathcart '347 with Claim 1 of Cathcart '193.

| Cathcart '347, Claim 6 | Cathcart '193, Claim 1 |
|---|---|
| A delivery system for the percutaneous insertion of a self-expanding vena cava filter being formed with a length along a longitudinal filter axis, said system comprising ||
| an elongated, radially flexible and axially stiff tubular member extending proximally from a distal end and having a distal end section, ||
| a segment carried in said distal end section for constraining the filter in a compact condition substantially coaxially with said tubular member, said segment being relatively short compared to the axial length of the filter and having an inner surface that resists penetration by the filter thereby to protect said tubular member from damage during transport of the filter, and ||
| **control means** | **a displacement member** |
| attached to said tubular member for displacing the filter from said segment thereby to deploy the filter. ||

This above comparison shows that the claims differ only in the fact that the shaded and bolded term "[a] displacement member" is substituted for the shaded and bolded term "control means." The other components of the delivery system described in the claims are identical.

Neither LifeScreen nor Opolski ever argued that the interaction of the displacement member with the other components of the delivery system imparted structure to "displacement member." (Pls. Op. Br. at 34; Pls. Ans. Br. at 28; Opolski Decl. at ¶ 42). To the contrary, LifeScreen conceded that "control means" is a non-structural means-plus-function limitation despite the presence of *the exact same language* that this Court found serves "to impart sufficiently definite structure." (Order on Claim Construction at 8 n.13).

### B. Cook's Evidence Burst The Presumption Against Means-Plus-Function Claiming

In applying the presumptions underlying the application of 35 U.S.C. § 112, ¶ 6, the Court held the defendants "cannot satisfy their burden to overcome the presumption merely by pointing to a different term where the presumption applies in the opposite direction." (Order on Claim Construction at 8-9 n.13).

According to Federal Rule of Evidence 301:

> In a civil case, unless a federal statute or these rules provide otherwise, the party against whom a presumption is directed has the burden of producing evidence to rebut the presumption. But this rule does not shift the burden of persuasion, which remains on the party who had it originally.

Rule 310 provides the default rule for rebutting a presumption in a civil case. *Cappuccio v. Prime Capital Funding LLC*, 649 F.3d 180, 189 (3rd Cir. 2011). According to the Third Circuit, under the widely-accepted "bursting bubble" theory of presumptions, "the introduction of evidence to rebut a presumption destroys that presumption, leaving only that evidence and its inferences to be judged against the competing evidence and its inferences to determine the ultimate question at issue.'" *Id.* at 189. The quantum of evidence needed to "burst" the presumption's "bubble" under Rule 301 is minimal. *Id.*; *see also A.C. Aukerman Co. v. R.L. Chaides Constr. Co.*, 960 F.2d 1020, 1037 (Fed. Cir. 1992) (a presumption "completely vanishes upon the introduction of evidence sufficient to support a finding of the nonexistence of the presumed fact").

Cook respectfully submits that it did not attempt to satisfy its burden "merely by pointing to a different term where the presumption applies in the opposite direction." Rather, as already determined by the Court, the term "displacement member" and "control means" are identical in the sense that neither term connotes structure. Under *Williamson,* all that Cook was required to show was that the words "displacement member" fail to recite structure. *Williamson v. Citrix*

8

*Online, LLC,* No. 2013-1130, 2015 WL 3687459, at *7 (Fed. Cir. June 16, 2015) ("When a claim term lacks the term 'means,' the presumption can be overcome . . . if the challenger demonstrates that the claim term fails to 'recite sufficiently definite structure'"). Once that occurred, any presumption associated with the lack of the word "means" in the displacement member limitation should have "burst," leaving only the evidence and inferences "to be judged against the competing evidence and its inferences." *Cappuccio*, 649 F.3d at 189; *see also Aukerman*, 960 F.2d at 1037; *Apex Inc. v. Raritan Computer, Inc.*, 325 F.3d 1364, 1372 (Fed. Cir. 2003) (the presumption against means-plus-function claiming "can collapse when a limitation lacking the term 'means' nonetheless relies on functional terms rather than structure or material to describe performance of the claimed function.").

Rather than remove the presumption, Cook respectfully submits that the Court used the presumption against Cook in a way that imposed a "heightened evidentiary showing" that the Federal Circuit disallowed in *Williamson:*

> Henceforth, we will apply the presumption . . . *without requiring any heightened evidentiary showing* and expressly overrule the characterization of that presumption as "strong." We also *overrule* the strict requirement of "a showing that the limitation essentially is *devoid of anything that can be construed as structure*."

*Williamson*, 2015 WL 3687459, at *7 (emphasis added).

### C. At The Very Least, This Court Should Have Disregarded The Extrinsic (and Unhelpful) Opolski Declaration

Citing the Opolski Declaration, the Court held that "one skilled in the art would understand the term 'displacement member,' as having sufficiently definite structure, in light of the specification." (Order on Claim Construction at 8 n.13; Opolski Decl. at ¶ 42)). However, the Opolski Declaration was conclusory, unhelpful, and incomplete.

9

On cross-examination, Opolski conceded that there was *no intrinsic support in his declaration for such an opinion*. (*See* Opolski Tr. at 283-286). In addition, Opolski admitted during his deposition that in arriving at his opinions, he had failed to conduct a "thorough" or "detail[ed]" review of the Cathcart '193 patent, (*id.* at 254-255), did not review the prosecution histories, (*id.*; *see also id.* at 104-106, 110, 253), did not review the prior art, (*id.* at 256), and was not "super familiar with specifically vena cava filter patent delivery systems," (*id.* at 293). Thus, Opolski's opinions do not actually reflect the understanding of a person of ordinary skill in the art at the time of the alleged invention, but instead are merely conclusory, unsupported assertions that conflict with fundamental substantive legal principles of claim construction. *See Phillips v. AWH Corp.*, 415 F.3d 1303, 1312-18 (Fed. Cir. 2005) (en banc) (claim construction requires review of entire intrinsic record including the claims, the specification, and the prosecution history).

At the claim construction hearing, Cook was prepared to provide the Court with Opolski's complete testimony on this issue. (*See, e.g.,* Cathcart Slides at 50). However, the Court made it clear that it was giving no weight to the Opolski Declaration. (*See* D.I. 80 Markman Tr. at 120 ("I know how to filter things, counsel."); *see also id.* at 90 (stating that Plaintiffs' reliance on extrinsic evidence was "inappropriate[]," and that the Court "really [was] not going to deal with" Opolski's testimony)). Cook respectfully submits that the concessions made by Opolski during his cross examination leave no doubt that the conclusory and unsupported opinion at paragraph 42 of the Opolski Declaration is entitled to no weight. As a result, this Court should reconsider its reliance on the Opolski Declaration.

## V. CONCLUSION

Cook respectfully requests that this Court reconsider its construction of the "displacement member" limitation and construe it to be a means-plus-function limitation.

10

Respectfully submitted,

POTTER ANDERSON & CORROON LLP

| | |
|---|---|
| OF COUNSEL: | By: */s/ David E. Moore* |
| | Richard L. Horwitz (#2246) |
| Dominic P. Zanfardino | David E. Moore (#3983) |
| Bradley G. Lane | Bindu A. Palapura (#5370) |
| Jason W. Schigelone | Stephanie E. O'Byrne (#4446) |
| James M. Oehler | Hercules Plaza, 6th Floor |
| BRINKS GILSON & LIONE | 1313 N. Market Street |
| NBC Tower, Suite 3600 | Wilmington, DE 19801 |
| 455 N. Cityfront Plaza Drive | Tel: (302) 984-6000 |
| Chicago, IL 60611 | rhorwitz@potteranderson.com |
| Tel: (312) 321-4200 | dmoore@potteranderson.com |
| | bpalapura@potteranderson.com |
| Dated: July 15, 2015 | sobyrne@potteranderson.com |
| 1195463 / 39841 (13-362) | |

*Attorneys for Defendants Cook Incorporated and Cook Medical LLC*